IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BARNETT LEON MCCROSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:21CV43 |
| ) | |
| PREFERRED FURNITURE ) | |
| COMPONENTS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss by Defendant Preferred Furniture Components, Inc. ("Preferred") [Doc. #10] and a Motion to Strike by Plaintiff Barnett Leon McCrosky [Doc. #12]. For the reasons explained below, the motion to dismiss is granted in part as to the retaliation claim and, as a result, the Court declines to exercise supplemental jurisdiction over the North Carolina Wage and Hour Act claim. The motion to strike is denied, but the facts in Preferred's brief that are not alleged in the Complaint are not considered.

I.

As an initial matter, McCrosky has moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike Preferred's brief in support of its motion to dismiss because it contains and relies on facts not alleged in the Complaint. (See Mot.) Rule 12(f) permits the court to strike certain material "from a pleading", but a brief is not a pleading, see Fed. R. Civ. P. 7(a). Nevertheless, a

Rule 12(b)(6) motion "tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). Therefore, although the motion to strike is denied, the Court has not considered the facts in Preferred's brief that are not alleged in the Complaint.

II.

As alleged in the Complaint, Preferred hired McCrosky as a truck driver in 1993, and five years later he was promoted to Warehouse Manager. (Compl. ¶¶ 19-20.) He served under three company presidents, never received any formal reprimands, and received raises throughout his career. (Id. ¶¶ 21, 23.) On or about December 1, 2015, Jim Hodgin was promoted to serve as Preferred's president. (Id. ¶ 22.)

On or about August 14, 2019, McCrosky "approached Hodgin to alert him about [McCrosky's] arrangements for that day's product deliveries." (Id. ¶ 24.) In response, Hodgin slammed his fist on his desk and yelled profanities at McCrosky, "particularly using the word 'goddamned.'" (Id. ¶ 25.) "Having just heard Hodgin violate the Third Commandment, [McCrosky] asked that Hodgin calm down and watch his language because [McCrosky] was 'a Christian who will always stand up for his God.'" (Id. ¶ 26.) Hodgin responded that "he didn't give a 'goddamn' what [McCrosky] wanted and immediately fired [him]." (Id. ¶ 28.)

After he was fired, McCrosky discussed possible severance with Hodgin, and Hodgin agreed to pay McCrosky $2,600 in severance ($100 for each year of

service) and provide a positive job reference. (Id. ¶¶ 29-30.) However, when McCrosky came to pick up his severance, Hodgin told him that he had unilaterally rescinded the agreement. (Id. ¶ 32.) There would be no severance. (Id.) And Hodgin told McCrosky that he should not expect a positive job reference, saying "'you wouldn't want me to lie, would you Mr. Christian?'" (Id. ¶ 33.)

McCrosky has sued Preferred for religious discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), and a violation of the North Carolina Wage and Hour Act (Count III). Preferred has moved to dismiss all three counts for failure to state a claim upon which relief can be granted. In response to the motion to dismiss, McCrosky voluntarily dismissed Count I. (Notice of Voluntary Dismissal [Doc. #14].)

III.

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the

3

complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

A.

McCrosky asserts a claim of retaliation in violation of Title VII and alleges that he "engaged in protected activity . . . by requesting accommodation for his religious practice and complaining about Hodgin's language" and was terminated for doing so. (Compl. ¶¶ 44-45.) Preferred argues that McCrosky has failed to allege that he engaged in protected activity or that there is a causal connection between any protected activity and his termination. (Br. in Supp. of Mot. to Dismiss ("Br. in Supp.") at 12-16 [Doc. #11]; Reply Br. in Supp. of Mot. to Dismiss ("Reply Br.") at 6-11 [Doc. #16].)

4

The Fourth Circuit Court of Appeals recently explained,

> [i]n the context of a Title VII case, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 152 L.E.2d 1 (2002). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by the that statute." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015).

Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (2020) (footnote omitted).

Not only does Title VII prohibit an employer from discriminating against any individual "because of such individual's . . . religion . . .", 42 U.S.C. § 2000e-2(a), but it also prohibits an employer from discriminating against an employee "because he has opposed any practice" that is unlawful under Title VII "or because he has made a charge . . . or participated in any manner in an investigation . . ." of a practice that is unlawful under Title VII, 42 U.S.C. § 2000e-3(a). Oppositional activity is protected when the plaintiff "reasonably believe[s] that the employment action []he opposed constituted a Title VII violation" and his "conduct in opposition was reasonable". Netter v. Barnes, 908 F.3d 932, 937-38 (4th Cir. 2018) (citing Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015); Laughlin v. Metro Wash. Airports Auth., 149 F.3d 253, 359-60 (4th Cir. 1998)).

> Accordingly, [the] inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII "above the speculative level." Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955); see also McCleary-Evans, 780 F.3d at 585-86.

Bing, 959 F.3d at 617.

B.

McCrosky alleges that he was terminated in retaliation for having requested accommodation for his religious practice. But Preferred contends that McCrosky has not sufficiently alleged that he requested such accommodation and, even if he had, he has not sufficiently alleged causation. (Br. in Supp. at 12-16.) McCrosky does not respond to this argument and focuses, instead, on the other alleged purported protected activity of opposing a hostile work environment which is addressed below, infra § C. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Br. in Opp'n") at 3-4 [Doc. #15].) By failing to respond, McCrosky has conceded this issue. See Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1667285, at *7-*8 (M.D.N.C. Apr. 23, 2010) (citing cases); Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) ("By failing to respond, Plaintiff concedes that he has not stated a . . . claim."). Cf. Local Civ. R. 7.2(a), 7.3(k) (providing response brief contents and consequence of not timely filing a brief or response). The "court nevertheless has an obligation to review the motion[] to ensure that dismissal [of this issue] is proper." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

Because McCrosky was not participating in any investigation or proceeding under Title VII, his request for accommodation would have to be oppositional activity to be protected. Protected oppositional activity occurs when an employee opposes discriminatory workplace conduct. For example, opposing the failure to

6

provide reasonable accommodation would constitute protected activity. But simply requesting accommodation does not.

Furthermore, even if requesting religious accommodation were protected activity, McCrosky has not sufficiently alleged that he did so. In relevant part, a religious accommodation comes about when an employee has a bona fide religious belief that conflicts with an employment requirement. Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996). An employment requirement "must create more than an obligation to tolerate; the requirement must constitute a duty to actively do something." Johnston v. Ga. Pac., LLC, No. 08-169-JJB, 2009 WL 2849619, at *3 (M.D. La. Sept. 3, 2009) (citing cases from the Fifth Circuit Court of Appeals). McCrosky alleges that he "asked Hodgin to calm down and watch his language because [McCrosky] was 'a Christian who will always stand up for his God.'" Just like plaintiff in Johnston, McCrosky "did not wish to refrain from some action that violates his beliefs, but instead wanted an end to the vulgar language and rude demeanor of his supervisor." Id. McCrosky has not plausibly alleged that his beliefs about taking the Lord's name in vain conflict with any requirement that he actively do something as part of his employment.

C.

Next, McCrosky also alleges that his "complaining about Hodgin's language" is protected activity. Relying on Boyer-Liberto, he argues that he was opposing a hostile work environment. (Br. in Opp'n at 3-4.) As in relevant here, a hostile work environment is one in which there is unwelcome conduct based on the employee's

7

religion "which is sufficiently severe or pervasive to alter the [employee's] conditions of employment and to create an abusive work environment". Boyer-Liberto, 786 F.3d at 271 (citation omitted).  Ultimately, a plaintiff alleging a hostile work environment would have to show "'the environment would reasonably be perceived, and is perceived, as hostile or abusive". Id. at 277 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)).

As explained above, oppositional activity is protected if McCrosky was opposing a violation of Title VII or reasonably believed he was.  Preferred contends that McCrosky could not have reasonably believed that he was opposing a hostile work environment. (Reply Br. at 6-10.)  According to Preferred, Hodgin's conduct that McCrosky opposed was not based on McCrosky's religion and McCrosky could not have reasonably believed that conduct was severe or pervasive. (Id. at 7-9.)  The Court agrees.

The purported hostile work environment that McCrosky opposed was Hodgin's "slamming his fist . . . and yelling profanities" including "the word 'goddamned.'"  McCrosky has not alleged that, at that time, Hodgin was aware of McCrosky's religion or religious beliefs nor has he otherwise plausibly alleged this conduct was based on McCrosky's religion. See Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 190 (1st Cir. 2003) ("[T]here is a conceptual gap between an environment that is offensive to a person of strong religious sensibilities and an environment that is offensive because of hostility to the religion guiding those sensibilities."); Wareham v. Dollar Bank, 937 F. Supp. 2d 656, 684 (W.D. Pa.

8

2013) (finding that use of profanity including the words "God damn" did not rise to the level of religious hostility to support a religious discrimination claim); Johnston, 2009 WL 2849619, at *2 (finding that where the conduct offended the plaintiff's "belie[f] that taking the Lord's name in vain violates Scripture", the plaintiff "has shown only that he took offense at the comments because of his personal, religious beliefs; he has not shown that the comments arose from a hostility towards those beliefs."). It is simply not plausible that when McCrosky complained to Hodgin he reasonably believed he was opposing conduct that violated Title VII.

This conclusion is further supported when assessing the sufficiency of the allegations of severe or pervasive conduct. McCrosky believes that Boyer-Liberto "is directly on point". (Br. in Opp'n at 4.) There, the Fourth Circuit Court of Appeals held that when "assessing the reasonableness of an employee's belief that a hostile environment is occurring based on an isolated incident" for purposes of a retaliation claim, "the focus should be on the severity of the harassment." 786 F.3d at 284. This involves determining "whether the discriminatory conduct is physically threatening or humiliating, or a mere offensive utterance." Id. (citation omitted). "[A]n employee is protected from retaliation for opposing an isolated incident of harassment when []he reasonably believes that a hostile work environment is in progress, with no requirement for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur." Id. There, the court found that "a reasonable jury could find that . . . two

9

uses of the 'porch monkey' epithet – whether viewed as a single incident or as a pair of discrete instances of harassment – were severe enough to engender a hostile work environment", as the use of that slur "is about as odious as the use of the word 'nigger'" which "'is pure anathema to African-Americans." Id. at 280. "'[P]orch monkey' is a racial epithet that is not just humiliating, but degrading and humiliating in the extreme." Id. at 285 (citation omitted).

McCrosky argues that Hodgin's slamming his fist on the desk and yelling profanities including the word "goddamned" is sufficiently severe under Boyer-Liberto. (Br. in Opp'n at 4.) Understandably, McCrosky was taken aback by Hodgin's behavior and offended by his profanity and taking the Lord's name in vain. But, as offensive as the use of the word "goddamned" is to McCrosky, it is quite different than the circumstances in which the offensive racial slur was made to Boyer-Liberto, as described in detail by the Fourth Circuit. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.") (internal citation omitted); EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (recognizing "that Title VII does not establish a general civility code for the American workplace", "even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard", and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with

10

[one's] supervisor are not actionable under Title VII") (internal quotations and citations omitted) (alterations in original). It is not plausible that McCrosky reasonably believed he was opposing a hostile work environment.

Because McCrosky has not sufficiently alleged protected activity in support of his retaliation claim, it is unnecessary to address Preferred's challenge to the sufficiency of the causation allegations.

IV.

McCrosky brings his North Carolina Wage and Hour Act claim pursuant to supplemental jurisdiction, 28 U.S.C. § 1367(a). That statute also permits a district court to "decline to exercise supplemental jurisdiction over" such a claim if "the district court has dismissed all claims over which it has original jurisdiction". 28 U.S.C. § 1367(c). Because the claims over which the Court had original jurisdiction are dismissed, the Court declines to exercise supplemental jurisdiction over the state law claim. Therefore, Preferred's motion to dismiss this claim will not be addressed. Instead, the claim is dismissed without prejudice.

V.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Preferred Furniture Components, Inc.'s Motion to Dismiss [Doc. #10] is GRANTED IN PART as to Count II (Retaliation in Violation of Title VII). The Court declines to exercise supplemental jurisdiction over Count III (North Carolina Wage and Hour Act) and that claim is dismissed without prejudice. IT IS FURTHER ORDERED that Plaintiff Barnett Leon McCrosky's Motion to Strike [Doc. #12] is

11

DENIED.  A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion.

This the 19th day of November, 2021.

<u>/s/ N. Carlton Tilley, Jr.</u>
Senior United States District Judge